## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**

       **Plaintiff,**

**v.**                       **Case No. 06-20043-JWL**

**JOSEPH L. SHURTZ,**

       **Defendant.**

### MEMORANDUM AND ORDER

Defendant Joseph Shurtz was convicted on December 1, 2006, of conspiracy to distribute methamphetamine, two counts of distribution of methamphetamine, possession with intent to distribute methamphetamine, and using and carrying a firearm during and in relation to a drug trafficking crime.  This matter is presently before the court on Mr. Shurtz's motion for acquittal (doc. 228).[1]  For the reasons explained below, Mr. Shurtz's motion is denied.

### I.      Standard

A motion for judgment of acquittal challenges the sufficiency of the evidence. *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994).  In deference to the jury's finding of guilt, the court must view the evidence in a light most favorable to the government. *United States v.*

---

[1]The plaintiff failed to file a response to the defendant's motion for acquittal within the time set by order of this court.  Thus, the court issued an order directing the plaintiff to show good cause why it failed to file a timely response.  The government responded to the show cause order and filed its response to the defendant's motion.  Because the court concludes that good cause has been shown not to decide the motion as uncontested, it will consider the plaintiff's response.

*Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998). The court must then determine whether there is substantial evidence to support a verdict of guilt beyond a reasonable doubt. *Id*. To support a conviction the evidence must do more than simply raise a suspicion of guilt; the evidence must be substantial. *United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997). The jury, as fact finder, is entitled to consider both direct and circumstantial evidence, as well as all reasonable inferences therefrom. *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir. 1986). "Even though rational jurors may believe in the likelihood of the defendants' guilt, . . . they may not convict on that belief alone." *United States v. Jones*, 49 F.3d 628, 632 (10th Cir. 1995).

## II.    Analysis

The evidence at trial, viewed in the light most favorable to the government, established the following facts. Mr. Shurtz regularly purchased methamphetamine from Rena Cross and James Stewart which he would then resell for a profit. Sometimes, in exchange for small quantities of methamphetamine, Walter Flaugher or James Watterson would deliver the methamphetamine to the intended recipient for Mr. Shurtz. Mr. Flaugher also delivered methamphetamine for Rena Cross and Mr. Scott on occasion.

On April 25, May 10, and August 16 of 2005, Mr. Shurtz sold methamphetamine to a confidential informant. The confidential informant testified that she was referred to Mr. Shurtz by Mr. Scott. After the controlled buy that occurred on August 16, 2005, law enforcement officials pulled over the vehicle Mr. Shurtz was driving. At that time, Mr. Watterson, who was also in the vehicle, jumped out and ran away from the car while carrying a bag. When the

2

officials apprehended Mr. Watterson, it was discovered that the bag contained two firearms.

A forensic chemist analyzed the substances received in the April 25 and May 10 controlled buys and concluded that both contained methamphetamine hydrochloride and dimethyl sulphone, an agent commonly used to cut methamphetamine. The April 25 substance was 50% pure and the May 10 substance was 51% pure. Based on all of these facts, a jury convicted Mr. Shurtz of conspiracy to distribute methamphetamine, two counts of distribution of methamphetamine, possession with intent to distribute methamphetamine, and using and carrying a firearm during and in relation to a drug trafficking crime.

Mr. Shurtz raises two issues in his motion for acquittal. Mr. Shurtz first argues that because the government did not prove that he conspired with each of the individuals charged in the indictment, it failed to meet its burden of establishing that the conspiracy was proven in the manner or means alleged in the indictment. Mr. Shurtz additionally argues that the court erred in instructing the jury that proof of each co-conspirator's involvement in the conspiracy was not necessary to support a conviction.[2]

In *United States v. Johnston*, 146 F.3d 785 (10th Cir. 1998), the defendant argued that the government failed to prove its case because it did not establish that he conspired with all of the co-conspirators named in the indictment. *Id*. at 791. The court noted that "[a] variance arises when the evidence adduced at trial establishes facts different from those alleged in an

_____

[2]Jury Instruction No. 23 provided: "The evidence in the case need not establish . . . that all of the persons charged to have been members of the alleged conspiracy were members." This language is identical to that found in Tenth Circuit Pattern Instruction No. 2.87.

3

indictment." *Id*. (citing *United States v. Ailsworth*, 138 F.3d 843, 847-48 (10th Cir. 1998). The Circuit went on to find, however, that there was no variance in the *Johnston* case. *Id*. The indictment in *Johnston* alleged that the defendant conspired with specific people named in the indictment "*and with others* both known and unknown to the Grand Jury to knowingly and intentionally distribute, and possess with intent to distribute, marijuana. . ." *Id*. (emphasis in original). Therefore, the Circuit concluded, "the government was not required to prove that Johnston conspired with any or all of the named codefendants, so long as it at least proved he conspired 'with others' for the purpose alleged." *Id*. Accordingly, the Circuit rejected the defendant's argument because the evidence was sufficient to show that the defendant had conspired with another person to facilitate the distribution of marijuana. *Id*.

As in *Johnston*, Count I of the indictment in this case (doc. 1) read as follows: "the defendants, Edward S. Scott, Rena J. Cross, Joseph L. Shurtz, James J. Watterson, Piper J. Noble, Tyrone D. Tyner, Bobby D. Garner, and Walter R. Flaugher, unlawfully, knowingly and intentionally combined, conspired, confederated and agreed together and with each other, and with other persons known and unknown . . . ." Because this indictment contained the "with other persons known and unknown" language, just like the indictment in *Johnston*, the court concludes that the government did not have to prove that Shurtz conspired with all of the named co-conspirators; it only had to prove that he conspired "with others" to distribute methamphetamine.

Mr. Shurtz does not argue that the evidence was insufficient for the jury to find beyond a reasonable doubt that he conspired with Ms. Cross, Mr. Watterson, Mr. Stewart, and Mr. Flaugher. Therefore, the court finds the evidence at trial was sufficient to support Mr. Shurtz's

4

conviction on the conspiracy count.  Because the court finds that the government did not have to prove each co-conspirator's involvement in the conspiracy, it further concludes that Jury Instruction Number 23 was appropriate and the court rejects Mr. Shurtz's argument to the contrary.

Second, Mr. Shurtz argues that he is entitled to acquittal on all counts because the government introduced no evidence establishing that the methamphetamine involved in the case had a stimulant effect on the central nervous system, which Mr. Shurtz alleges is necessary to establish the methamphetamine was a controlled substance within the meaning of 21 C.F.R. § 1308.12(d) and 21 U.S.C. § 812.  The court disagrees.

Controlled substances are divided into different schedules.  *See* 21 U.S.C. § 812(a).  21 C.F.R. § 1308.12 provides that Schedule II of controlled substances includes: "(d) Stimulants. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system: . . . (2) Methamphetamine, its salts, isomers, and salts of its isomers . . . ."

According to Mr. Shurtz, this regulation requires that, to prove the methamphetamine in question is a controlled substance, the government must prove it has a stimulant effect on the central nervous system.  The court, however, interprets the regulation to state that methamphetamine, by definition, is a substance which has a stimulant effect on the central nervous system.  Although the court has not located a Tenth Circuit opinion addressing this issue, other circuits have reached a similar conclusion.  *See United States v. Durham*, 941 F.3d

5

886, 890 (9th Cir. 1991)("[T]he government need not prove methamphetamine is a central nervous system stimulant, since the regulation has already defined it as such.")(citing *United States v. Picklesimer*, 585 F.2d 1199 (3rd Cir.1978); *United States v. White*, 560 F.2d 787, 789-90 (7th Cir. 1977); and *United States v. Nickles*, 509 F.2d 810 (5th Cir. 1975)).   Accordingly, the forensic chemist's testimony that the substances in question contained methamphetamine was sufficient for a jury to conclude beyond a reasonable doubt that the substances were methamphetamine, which is a controlled substance.  *See Durham*, 941 F.3d at 890 ("Proof beyond a reasonable doubt that the substance charged is methamphetamine is sufficient.").

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for acquittal (doc. #228) is denied.

**IT IS SO ORDERED.**

Dated this 13th  day of February, 2007.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge